Stephen GROSSO, Petitioner,

v.

Stanley RESOR, United States Secretary of the Army, Commanding Officer, Fort Hamilton, New York, Commanding General, Fort Ord, California, Commanding General, 25th Infantry Division, Viet Nam, Respondents.

Civ. A. No. 70-C-1538.

United States District Court,
E. D. New York.

Jan. 13, 1971.

Eugene Prosnitz, New York City, for petitioner.

Edward R. Neaher, U. S. Atty., Eastern District of New York, for re-

spondents; Bruce F. Smith, Asst. U. S. Atty., of counsel.

BARTELS, District Judge.

Stephen Grosso, presently serving with the 25th Infantry Division, Vietnam, petitions this court for mandamus and *habeas corpus* relief on the grounds that (1) his induction into the Army was unlawful because he was medically unfit under procurement medical standards due to the existence of a left inguinal hernia (Army Regulation 40–501, Chap. 2, Sec. II, Par. 2–3h) and (2) the Army has failed to follow Army Regulation 635–200, Chap. 5, Sec. III, Pars. 5–5 and 5–9 and Army Regulation 40–501, Chap. 11, Sec. XIV, Par. 11–16 (b), in connection therewith.

After a hearing held on December 31, 1970 and January 6, 1971, at which petitioner, petitioner's father, petitioner's doctor and two Army doctors testified, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

On September 5, 1969, petitioner was ordered to report for a pre-induction physical examination on September 22, 1969.

On September 10, 1969, petitioner visited his family physician, Dr. Leonard J. Kirschbaum, who found that petitioner had a left inguinal hernia. The first reference to this condition is found in a report of an ROTC medical examination of the petitioner by Dr. Gray E. Mombello on March 4, 1968, which apparently lists petitioner as having a small asymptomatic left inguinal hernia.

To his pre-induction physical, on September 22, 1969, petitioner took a note from Dr. Kirschbaum. However, Dr. J. D. Grillo, the military doctor who examined petitioner, found no hernia. The military authorities then sent petitioner to a civilian contract physician, Dr. Krasnoff, for a surgical consultation. Dr. Krasnoff examined petitioner for a hernia in the standing position but found no inguinal hernia. As a result, petitioner was found fully qualified for induction.

On October 13, 1969, petitioner was again examined by his family physician, Dr. Leonard Kirschbaum, who again found a left inguinal hernia. It appears that the results of this examination are reported in the doctor's note of October 18, 1969, as well as in his note dated October 13, 1969. On October 21, 1969, petitioner was examined by a surgeon, Dr. Alfred I. Frankel, who found a left inguinal hernia and advised prompt surgical repair.

On October 18, 1969, petitioner wrote to Colonel George W. Sgalitzer, Surgeon, United States Army Recruiting Command, requesting a review of his pre-induction physical examination of September 22, 1969. In response to this request, petitioner was medically examined at Fort Hamilton on November 6, 1969, by Dr. William Bilechy, civilian contract physician. The examining physician found no evidence of an inguinal hernia, even after stress, jumping and bearing down. After consideration of the medical evidence theretofore adduced, Colonel Sgalitzer concluded that petitioner was qualified for induction under the induction physical standards applicable, specifically, Army Regulation 40–501, Chap. 2, Sec. II, Par. 2–3h.

On November 22, 1969, petitioner was examined by Dr. Eugene P. Simon, a private physician, who found petitioner had a left inguinal hernia and recommended surgical repair as soon as possible.

On January 8, 1970, Congressman Allard K. Lowenstein wrote to Colonel Sgalitzer requesting a new medical examination for petitioner. On January 22, 1970, another medical examination was performed by Dr. William Bilechy, who again reported that his examination revealed no evidence of any inguinal hernia. On January 26, 1970, Colonel Sgalitzer wrote to Congressman Lowenstein that he had determined that petitioner was medically qualified for induction.

Petitioner reported for induction on March 9, 1970, and was inducted into the United States Army at Fort Hamilton, Brooklyn, New York.

On May 20, 1970, petitioner's father wrote to Congressman John Wydler stating, in pertinent part:

"I believe that pursuant to AR 40–501, II, 2–3h. (1) which states, 'The causes for rejection for appointment, enlistment and induction are—h. (1) Hernia other than small asymptomatic umbilical or hiatal;' that my son Stephen was wrongly inducted into the Army in view of his well documented medical disability—inguinal hernia condition.

"If the Army had to take my son with a medically disqualifying condition, I feel that they should not have assigned him to such strenuous duties as advanced infantry in the light of his physical inpairment. If my son must serve in the Army with this disability, I feel justified both morally and legally in requesting that he be transferred from the infantry to a desk or non-physical type of position where he will not continue to aggravate his existing hernia and to suffer daily pain.

"Mr. Wydler, may I implore you to use your influence to look into my son's situation. I would be happy if you could at least arrange to have him transferred from the infantry as soon as possible."

This letter was apparently forwarded by Congressman Wydler to the Commanding General at Fort Ord, whose office responded by telegram that "Private Grosso will be evaluated in the U. S. Army Hospital here at Fort Ord."

On June 15, 1970, petitioner visited the dispensary at Fort Ord, California, complaining of a hernia, but no hernia was found.

On July 25, 1970, petitioner, home on leave, was again examined by his family doctor, Dr. Kirschbaum, who again found a left inguinal hernia (the same one as on his previous examination of October 13, 1969) and recommended surgical repair. On July 27, 1970, Dr. Jurmann examined petitioner and found an impulse upon coughing and a slight bulge of the left internal ring.

Petitioner testified that on July 29, 1970, he visited the Fort Hamilton dispensary and was examined by Drs. Wirth and Tiger, who told him that he had a hernia.

On August 3, 1970, petitioner was examined at Fort Lewis, Washington, by Dr. Schuce, who found an impulse at the level of the left internal ring, which he analyzed as probably a small indirect hernia or lipoma of the cord. Dr. Schuce recommended an operation to explore the left inguinal ring.

Petitioner testified that on August 4, 1970, another doctor at Fort Lewis, Dr. Lavignne, found that petitioner had a hernia after a complete medical examination.

On August 7, 1970, petitioner refused surgery at Fort Lewis and was returned to duty, but was given by Dr. Bruns a 3 T profile, indicating that he was to do no lifting over 30 pounds for the next thirty days.

Petitioner testified that he was examined in Vietnam on October 17, 1970, was found to have a small hernia, and was ordered to do no heavy lifting. Petitioner also testified that on November 16, 1970, he was examined by Dr. Twomey and an unnamed physician, who found a hernia and ordered him continued on a 3 profile.

At no time has petitioner requested a discharge from the Army pursuant to Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–5b, upon the ground that a procedural error has resulted in his erroneous induction.[1]

---

1. Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–5, provides as follows:

"Erroneous induction. a. Enlisted personnel erroneously inducted in the Army

The parties have entered into a stipulation of evidence of medical examinations and reports, which has been received into evidence and is annexed hereto.

On December 21, 1970, petitioner filed his petition in this court for a writ of mandamus, and on December 29, 1970, amended his petition to also seek a writ of *habeas corpus*.

### Conclusions of Law

The court finds that it has no jurisdiction to test the validity of the induction order. *Habeas corpus* is unavailable because there is no Army official in this district having custody over the defendant. United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969), cert. denied, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969). Mandamus is inappropriate because there is no Army officer who is under a duty, clearly prescribed (Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970)), to examine the validity of the induction order and to release the petitioner if such order is invalid.

Moreover, the numerous pre-induction Army physical examinations clearly provide a basis in fact for the determination that petitioner was medically fit under the procurement standards.

The Army complied with Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–9, in not convening a medical board to consider whether petitioner had a medical condition which would have permanently disqualified him for service had it been detected at time of induction.[2] I find that this regulation is constitutional.

Giving petitioner the full benefit of a liberal interpretation of Par. 5–9, I cannot find that he made a request within four months, as required by the regulation. His visit to the dispensary on June 15, 1970, did not serve as a request to his unit commander for discharge because of illegal induction. Likewise, the father's letter to Congressman Wydler can only be read as a request for a desk or non-physical type of position. He specifically uses the words "assigned" and "transferred". United States v. Holmes, 426 F.2d 915 (2d Cir. 1970), petition for cert. filed, 38 U.S.L.W. 3357 (Mar. 17, 1970) (No. 1311), relied upon by the petitioner, is inapposite for there the registrant unequivocally made the required request but made it improperly. Here no request for the desired relief was made by petitioner. In addition, the request was certainly not made to the unit commander. Thus, petitioner did not avail himself of the procedures of Par. 5–9 to raise the alleged illegality of his induction.

I find that Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–5, is not available to complain of physical disqualification for induction because, by its terms, it is inapplicable to individuals who "may be processed" under Par. 5–9.

In passing, it should be noted that Par. 5–5a is absolute in its command that "Enlisted personnel erroneously inducted in the Army will be released

will be released from custody and control of the Army * * *. This paragraph is not applicable to individuals who may be processed under paragraphs 5–6b and 5–9 of this regulation * * *.
"b. An individual claiming erroneous induction because of denial of a procedural right as provided by the Military Selective Service Act of 1967 may submit a request for release from custody and control of the Army. * * * [Procedure set forth.]"

2. Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–9, provides:

"Discharge of personnel who did not meet the medical fitness standards. a. Commanders * * * are authorized to order discharge of individuals who were not medically qualified under procurement medical fitness standards when accepted for induction or initial enlistment. * * * [Standards for eligibility for discharge.]"
"(2) A request for discharge will be submitted by the individual to his unit commander within 4 months from date of initial entry on active duty * * *."

from custody." Par. 5–9 is not peremptory, for it says that commanders are *authorized* to order the discharge of individuals who were not medically qualified under procurement medical fitness standards when accepted for initial enlistment or induction. In defining the term "authorized", it appears appropriate to refer to Sec. II, Par. 5–3, entitled "Authority", which states: "Except as delegated by this regulation * * *, the discharge or release of any enlisted member of the Army for the convenience of the Government will be in the Secretary's discretion * * *." Thus in comparing Pars. 5–5 and 5–9, it appears that the Army has decided to make the discharge of individuals who are inducted erroneously under medical standards discretionary, whereas other forms of erroneous induction (i. e., procedural errors, Par. 5–5b) mandate automatic discharge. Consequently, a post-four-month medical discharge request cannot be considered under Par. 5–5, since this would, in effect, afford more favorable treatment to a serviceman presenting a tardy claim for medical discharge.

■■■ I find that the failure of the Army doctors to examine the petitioner in a supine position as specified in Army Regulation 40–501, Chap. II, Sec. XIV, Par. 11–16b [3] neither invalidates the induction order nor entitles petitioner to release under Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–5. Paragraph 11–16b appears to be merely a guide to the performance of medical examinations to be conducted by licensed physicians. Furthermore, the paragraph is ambiguous, in that it is unclear whether it requires an examination of a hernia to be performed in both the supine and standing positions, or only in standing position. The regulation as to examination in the supine position may be read to apply to the examination of the abdomen alone. Assuming that the regulation is mandatory in nature and must be read to require a supine examination, it does not follow that this automatically renders the induction order invalid. Failure to follow a regulation may not be complained of where such failure does not prejudice the petitioner. United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 375 (2d Cir. 1969). Here the existence of the four pre-induction examinations, at least one of which was performed after stress and bearing down, indicates that no prejudice resulted from the failure to examine the petitioner in the supine position. It appears from the testimony that the standing and stress examinations are the most reliable technique for the detection of hernia.

In addition, it is questionable whether this court has any jurisdiction to pass upon the validity of the induction order due to the failure to examine the petitioner in the supine position. *Habeas corpus,* of course, is unavailable because the petitioner is not in custody. Mandamus appears inappropriate because even if the Army is now ordered to examine the petitioner in the supine position, such examination will not tell us whether he had a hernia prior to induction.

Finally, with respect to petitioner's claim that the failure to give him a supine examination entitles him to release under Army Regulation 635–200, Chap. 5, Sec. III, Par. 5–5, it is clear that he has failed to exhaust the administrative remedies available under that regulation. He has not submitted a request for release under subdivision b, Par. 5–5, of the regulation.

Accordingly, the petition for a writ of mandamus and/or *habeas corpus* must be, and hereby is, dismissed.

So ordered.

---

3. Army Regulation 40–501, Chap. 11, Sec. XIV, Par. 11–16b provides:
"A thorough examination of the abdomen must be performed with the patient in the supine position as well as an examination in standing position for detection of hernia."

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHEN GROSSO,

                Petitioner,

    -against-

STANLEY RESOR, United States
Secretary of the Army; Commanding
Officer, Fort Hamilton, New York;
Commanding General, Fort Ord,
California; Commanding General,
25th Infantry Division, Viet Nam,

                Respondents.

Civil Action
No. 70 C 1538

---

STIPULATION OF EVIDENCE ON MEDICAL EXAMINATIONS
AND MEDICAL REPORTS

                           EDWARD R. NEAHER
                           United States Attorney
                           Eastern District of New York
                           Attorney for Respondents
                           225 Cadman Plaza East
                           Brooklyn, New York  11201

BRUCE F. SMITH
Assistant U. S. Attorney
  (Of Counsel)

PRE—INDUCTION EXAMINATIONS AND MEDICAL REPORTS

| Date | Exhibit No. | Physician or Station | Results |
|---|---|---|---|
| 3/4/68 | Plaintiff's Exh. 1 & Govt.Exh. B–1 | First U. S. Army Dr. Gray E. Mombello | "Hernia, small, asymptomatic left inguinal |
| 9/10/69 | Plaintiff's Exh. 2 | Dr. Leonard J. Kirschbaum [private] | "Stephen Grosso "Left Inquinal Hernia [report bears stamp "Reviewed and considered in Examinee's Physical Profile, 22 Sept. 69" and initials of Dr. Martin L. Goldman, Chief Medical Officer at Fort Hamilton]. |
| 9/22/69 | Govt. Exh. B–2 | Fort Hamilton, AFEES Dr. J. D. Grillo [pre-induction physical] | "no hernia found" |
| 9/22/69 | Govt. Exh. B–3 | Fort Hamilton, AFEES Dr. Krasnoff [surgical consultation] | "Applicant examined in the standing up-right position. There is no abdominal weakness nor bulging on the left side—the left inguinal ring permits introduction of index finger but there is no impulse upon cough—   Impression—There is no inguinal hernia". |
| 10/13/69 | Plaintiff's Exh. 3 & Govt. Exh. B–5 | Dr. Leonard J. Kirschbaum [private] | "Stephen Grosso has been examined and has a left inguinal hernia." |
| 10/18/69 [same exam. as note of 10/13] | Plaintiff's Exh. 4 & Govt.Exh. B–5 | Dr. Leonard Kirschbaum [private] | "This patient has a left inguinal hernia and should do no heavy lifting." [Both note of 10/13 and note of 10/18 bear the stamp "Reviewed and considered in Examinee's Physical Profile," dated 10/28/69 and bearing initials of Dr. Martin L. Goldman]. |

## PRE–INDUCTION EXAMINATIONS AND MEDICAL REPORTS

| Date | Exhibit No. | Physician or Station | Results |
|---|---|---|---|
| 10/21/69 | Plaintiff's Ex. 5 & Govt.Exh.B | Dr. Alfred I. Frankel [private] | "Mr. Stephen Grosso was this day examined by me and was found to have a Left Inguinal Hernia. "I have advised surgical repair of same as soon as possible. "Thank you. [The note also bears the stamp "Reviewed and considered in Examinee's Physical Profile," dated 11/6/69 with Dr. Goldman's initials affixed (Govt.Exh.B). |
| 11/6/69 | Govt.Exh. B–4 | Fort Hamilton, AFEES Dr. William Bilechy [surgical consultation] | "History—Candidate states he was told he had a left inguinal hernia. "Examination—reveals no evidence of an inguinal hernia on either side of this examination even after stress, jumping and bearing down. "Opinion—no physical evidence of an inguinal hernia on this examination." |
| 11/22/69 | Plaintiff's Exh. 6 | Dr. Eugene P. Simon [private] | "I examined Mr. Stephen Grosso in my office of November 22, 1969. He has a left inguinal hernia. He should avoid strenuous exercise and lifting." |
| 12/12/69 [using exam. of 10/21/69 referred to in Dr. Frankel's note of 10/21/69, Plaintiff's Exh. 5] | Plaintiff's Exh. 7 | Dr. Alfred I. Frankel [private] | "Mr. Stephen Grosso was examined by us on Oct. 21, 1969 and found to have a left inguinal hernia. "We have advised surgical repair of same as soon as possible. At the present time, however, any physical exertion of any kind, is inadvisable because of the existence of the hernia. Mr. Grosso should not do any extended walking, running, or lifting, etc. which would aggravate his physical condition and further the hernial defect." |
| 1/22/70 | Govt. Exh. B–7 | Fort Hamilton, AFEES Dr. Bilechy [surgical consultation] | "Re-evaluation for possible inguinal hernia "Examination reveals no evidence of any inguinal hernia on this examination" |

## POST–INDUCTION EXAMINATIONS AND MEDICAL REPORTS

| DATE | EX. NO. | STATION OR PHYSICIAN | FINDINGS |
|---|---|---|---|
| 6–15–70 | Plaintiff's Exh. 13 | Dispensary, Fort Ord | "Hernia times (?) 1 wks. "No Hernia" |
| 7–25 | Plaintiff's Exh. 10 | Dr. Kirschbaum | "Examined . . . today and find that he still has a left inguinal hernia (the same as on my previous examination of 10–13–69)" "Surgical repair would be in order. He also should avoid heavy lifting and any strenuous exercise." |
| 7–27 | Plaintiff's Exh. 11 | Dr. Jurmann | "Examination revealed a definite cough impulse and slight bulging of the left internal ring upon straining of Valsalva maneuver." |

## POST—INDUCTION EXAMINATIONS AND MEDICAL REPORTS

| DATE | EX. NO. | STATION OR PHYSICIAN | FINDINGS |
|---|---|---|---|
| 7–29 | N.A. | Ft. Hamilton (Drs. Wirth and Tiger) | Grosso testifies he was told he had a hernia. |
| 8–1 | Govt. Exh. B–10 | Ft. Lewis (Dr. Bruns) | Requests consultation in re hernia. |
| 8–3 | Govt. Exh. B–11 | Ft. Lewis (Dr. Schuce) | "On P.E. today has impulse at level of L internal ring which is probably a small indirect hernia or a lipoma of the cord. In view of multiple consultants and probable hernia I would recommend exploration of L inguinal area and will admit for same." |
| 8–4 | Included in Govt.C | Ft. Lewis | "Statement" of Grosso: "[Dr. Lavignne] told me I had a hernia, and also gave me a complete medical examination . . . Another doctor, (I think his name is Taylor), spoke to me, and I told him I didn't want an operation. I told him that I had had the hernia before I was drafted, and that this should have disqualified me from the draft. He then cancelled my admission, and I returned to the Holding Company at approximately 2015 hours, 3 August 1970. "I would like, if possible to go before a medical board." |
| 8–7 | Govt. Exh. B–9 | Ft. Lewis (Dr. Bruns) | "admitted . . . and refused surgery. He is deployable. "Temp profile X 30 days "Code U [1]—No lifting—30# "Code F" [2] |
| 8–7 | Plaintiff's Exh. 14 | Ft. Lewis (Dr. Bruns) | "medically qualified for temporary restricted duty "Physical Profile: Present: 3T [3] "Hernia. "No lifting over 30 lbs. "The above conditions are temporary, individual is to report to a medical facility on 7 Sep 70" |
| approx. 10/17 | N.A. | RVN | Grosso testifies unnamed examining physician found small hernia and adv. he return when it 'bulges'; no new profile "small L inguinal hernia" no heavy lifting for one month "report to medical facility on 17 Nov. 70." |
| 11–16 | N.A. | RVN (Dr. Twomey and an unnamed MD) | Grosso testifies that Dr. Twomey examined and found hernia, and had consultation with another MD; one of these two signed a '3' profile. |

Notes:
1. U = functional impairment requiring assignment limitations unique to each case AR 40–501; 9–5(3).
2. F = requires continuing supervision of followup; No assignment to isolated area. (Ibid.)
3. 3T = failure to meet procurement standards; temporary (permanent requires medical board). AR 40–501; 9–3. c. (3). AR 40–501; 9–4. b.