Luis **FELICIANO**, Petitioner-Appellant,

v.

Hon. Melvin R. **LAIRD**, Secretary of Defense, Hon. Stanley Resor, Secretary of the Army, Commanding Officer, Fort Wadsworth, Staten Island, New York, Respondents-Appellees.

**No. 669, Docket 34560.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1970.

Decided April 16, 1970.

Chester L. Mirsky, New York City, for petitioner-appellant.

James A. Pascarella, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., Eastern District of New York, on the brief), for respondents-appellees.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and DOOLING, District Judge.*

LUMBARD, Chief Judge:

Petitioner Luis Feliciano appeals from an order of the United States District Court for the Eastern District of New York which denied his petition for a writ of habeas corpus for release from the Army or, in the alternative, for a mandamus to compel the Army to grant him compassionate reassignment to the New York City area. Finding that the Army has not followed its own regulations governing the processing of hardship discharges, we reverse and, by writ of mandamus, order that the application be reconsidered in accordance with this opinion. Because it is now premature, we do not consider petitioner's claim that the Army's denials are arbitrary and irrational.

Feliciano, then twenty-one years old, was drafted into the Army on June 29, 1969. After basic training he was assigned to Fort McClellan, Alabama, for Advanced Infantry Training.[1] On November 17, 1969, Feliciano was ordered to report to Oakland, California, by December 16, 1969, for shipment to Vietnam. Given leave in the interim, he returned to New York City where he makes his home. On November 25, he sent to the Department of the Army in Washington a formal application for compassionate reassignment to the New York City area which was forwarded to the Compassionate Review Advisory Panel for consideration. He was then attached to Fort Wadsworth on Staten Island to await word, where he still remains.

---

* Of the Eastern District of New York, sitting by designation.

1. While at Fort McClellan Feliciano made an abortive attempt to submit his application for a hardship discharge to the proper authorities.

The grounds for his application were that Feliciano's wife is only seventeen years old; that on November 26, 1969, she gave birth to a premature child; that they had no savings and his wife was on welfare; that his mother, with whom his wife was living in New York, was depressive and suicidal; that there was severe conflict between his wife and his mother; that his wife had progressed to such a state of anxiety that there was according to Dr. Harvey Karkus, a very real possibility of suicide, and that she was diagnosed as "Reactive Depression, severe"; that Feliciano's parents were about to return to Puerto Rico,[2] that his wife spoke no English. knew no one else in New York City, and lived in a neighborhood composed of hovels, almost totally deserted, and that her apartment was the only one occupied in her building. Feliciano requested that on compassionate grounds he be reassigned to the New York City area, so that his wife and infant child would not be totally alone.

On December 4, 1969, the application was denied without any elaboration by Colonel Jesse LoRe after consultation with the Compassionate Review Advisory Panel. Pursuant to established procedures, Feliciano then submitted his application for consideration as a request for a hardship discharge to the Hardship Separation Review Board at Fort Wadsworth. He supplemented the application with a letter, dated December 16, from Dr. Karkus stating that Mrs. Feliciano's "depression will continue indefinitely with strong suicidal potential, unless her husband is with her permanently." A second supplementary letter told of a job offer if Feliciano was discharged.

The hardship application was reviewed independently by the four members of the Fort Wadsworth Personnel Center Hardship Review Board, each of whom disapproved.[3] Their separate opinions were consolidated and forwarded to Lieutenant Colonel Nicholas De-Maria, the officer at Fort Wadsworth with the final authority over hardship discharges. After an independent review, he also disapproved the application on the stated grounds that:

"Evidence presented by EM [i.e., enlisted man] proved his hardship to be no more severe than that experienced by many other Army personnel and is not sufficient to warrant his separation under the provisions of Chapter 6, Section II, AR 635–200 * * *."

Feliciano was so notified on December 22, 1969, and a week later was ordered to report to Oakland by January 9, 1970, for shipment to Vietnam.

Feliciano then contacted Colonel LoRe in Washington who agreed to review his office's prior denial of Feliciano's application for compassionate reassignment; the reconsideration evidently was granted on the basis of Dr. Karkus' letter of December 16, 1969, which had not previously been presented. As before, Feliciano was continued on the rolls of Fort Wadsworth pending a determination. On January 15, 1970, the application was again denied, on the grounds that:

"Problems presented are no more severe than those experienced by contemporaries and their families in similar circumstances."

For the third time Feliciano was ordered to report to Oakland for shipment to Vietnam. He was to arrive in Oakland on January 31, and was relieved from attachment to Fort Wadsworth as of January 27. On the afternoon of the 27th, his attorney filed the present action in the Eastern District of New York.

The government raises a preliminary objection to the petition for habeas corpus, challenging the jurisdiction

---

2. Subsequent to the application, Feliciano's parents returned to Puerto Rico.

3. Questioning of the government at oral argument failed to elucidate whether these separate opinions were oral or written, reasoned or conclusory.

of the Eastern District and this court.[4] As we are treating this as a petition for mandamus, we do not consider the issue. Original jurisdiction to issue mandamus has been vested in the several district courts, 28 U.S.C. § 1361 (1964), and venue is proper, 28 U.S.C. § 1391(e) (1964). As we have often reiterated, this court's power either on habeas corpus or mandamus to intervene in discretionary determinations of the military is extraordinarily limited. Nixon v. Secretary of the Navy, 422 F.2d 934 (2 Cir. 1970). But we do not need to decide whether this is the rare case where the Army's disapproval of the applications was so arbitrary and irrational that it cannot stand. As the Army failed to follow its own regulations in considering Feliciano's application for a hardship discharge it is the kind of error that we do not hesitate to rectify. Smith v. Resor, 406 F.2d 141, 145 (2 Cir. 1969); Hammond v. Lenfest, 398 F.2d 705, 715 (2 Cir. 1968); Dunmar v. Ailes, 121 U.S. App.D.C. 45, 348 F.2d 51 (1965). Accordingly, we order the Army to reconsider the application properly, *de novo*.

The relevant procedures governing consideration of hardship discharge requests are set out in AR 635–200, ¶6–8(b)1:

"If the application does not contain conclusive evidence upon which to base a clear-cut decision that release

is or is not warranted, the application and supporting evidence will be forwarded by letter to the Director of Selective Service of the State in which the individual's local board of jurisdiction is located. The letter will request a statement as to whether the circumstances presented in the application would result in deferment on the basis of undue and genuine hardship to the individual's dependents if he were being considered for induction. * * * It is not mandatory in any way that the officer having discharge authority follow the recommendation of the State Director of Selective Service, but when such statement is received it will be considered in relation to the other supporting evidence. When the need arises, the recommendation of the State Director may be disclosed. If a report by the American National Red Cross is appropriate, it will be handled as prescribed in paragraph 6–9b(3). All subsequent applications for hardship or dependency discharge from the same inductee or enlistee also will be referred to Selective Service. Recommendations made by the Selective Service System become part of the application for separation and will be placed in an individual's Military Personnel Records Jacket, U. S. Army."

Despite the mandatory language of the regulation, the Army did not for-

4. The government raises the narrow objection that Feliciano, having been detached from Fort Wadsworth, was in transit to a station in Oakland, was not under control or custody of a military officer within the jurisdiction of the Eastern District of New York as required by 28 U.S.C. § 2241 (1964). In United States ex rel. Rudick v. Laird, 412 F.2d 16 (2 Cir. 1969), we found it unnecessary to decide whether the duty station from which petitioner had been detached, the one to which he had been ordered, or both had control, as Rudick filed his petition in a district where neither was located. But we have no doubt that when, as here, the petition is filed in the district where the dispatching station is located, jurisdiction exists. See Laxer v. Cushman, 300 F. Supp. 920, 923 (D.Mass.1969); Weber v.

Clifford, 289 F.Supp. 960, 961 (D.Md. 1968). Despite the detachment order of January 26, Fort Wadsworth in all meaningful senses still controls petitioner for purposes of § 2241.

The stay granted by the district court pending its decision on the petition and continued by us pending this appeal was directed to Feliciano's commanding officers at Fort Wadsworth, and its success in retaining petitioner there is convincing evidence that these men in fact have control over him. Whatever the mysteries of Army bookkeeping might ordain, see Laxer v. Cushman, 300 F.Supp. 920 at 923, n. 3, the fact that Feliciano has been in this district and attached to Fort Wadsworth for over three months cannot be ignored.

ward the application to the Selective Service System.[5]

■ When the application does not present a clear case for rejection on its face, the Army must under the mandatory language of the provision forward it to the State Director of Selective Service for an advisory recommendation on the basis of "the circumstances presented in the application." It seems clear that the Army similarly must, within limits of credibility, assume the facts in the application are true when making its initial scrutiny of the request. Instead, Colonel DeMaria quibbled over the financial data, an ancillary element of the application, and discounted a psychiatrist's diagnosis on the basis of a rather far fetched lay judgment.

At the hearing below, Colonel DeMaria testified at length about his interpretation of the psychiatric evidence:

"Then we come to a letter of November 26, written by Dr. Karkus. He doesn't state there was any history of psychiatric treatment or condition.

He doesn't say that there is any treatment being given to her now.

"He just states: 'The possibilities of a suicide attempt must be considered.'

"That's his only reference to a suicidal attempt or any psychiatric condition, other than being emotionally upset, which we find many [wives are].

\* \* \* \* \* \*

"Dr. Karkus again, who again, on the 16th of December, 'I anticipate the depression will continue indefinitely, with strong suicidal potential.'

"Again, he refers to this but no treatment in between, that she is a patient of his or she is seeing him on a reoccurring basis. There is no prescribed treatment here, other than this one and [the] other statement. Then,

"[W]e give [a] great deal of consideration to the psychiatric portion. Any time that we get a case that involves a wife that has a psychiatric condition, if there is any history to it at all, we then recommend that they be sent either to our physician or to Public Health for an evaluation by a military psychiatrist."

The Court: "That was done in this case?"

"In this case there was no history of it. No reference to any psychiatric condition at all. So we discounted it."

Thus, Colonel DeMaria accorded two closely-related effects to the absence of a prior history. First, Mrs. Feliciano's condition evidently was not considered serious enough—or Dr. Karkus's diagnosis, unsupported by a history, was not considered reliable enough—even to justify an examination by a military psychiatrist. More important, it seems that without a prior history, the application was rejected. This is the only possible reading of Colonel DeMaria's formal determination that the "evidence presented by EM proved his hardship to be no more severe than that experienced by many other Army personnel."

A lay assessment of the weight to be accorded a thoroughly ambiguous bit of medical history, however, is simply not "conclusive evidence." Severe mental disturbance, like other sorts of illness, can flare up suddenly when an extreme situation brings it to the surface. Here, an unexpected pregnancy, life with a severely disturbed mother-in-law in cramped quarters, the premature birth of the baby, the mother-in-law's return to Puerto Rico leaving her totally alone in New York City—these shocks may well have triggered a latent condition into an active illness. Even if the condition was visible but less severe before the above events, Mrs. Feliciano's youth and extreme poverty render medically meaningless the absence of a prior histo-

5. As mentioned in the regulation, The Army may also request the assistance of the Red Cross if a factual investigation of the dependent's situation is required. See AR 635–200, ¶ 6–9.

ry. While obviously a prior history adds a further dimension to a diagnosis, a layman cannot discount the severity of a condition on the basis of its absence. The absence of a prior history hardly meets the regulatory standard that there be conclusive evidence that release is not warranted before an application is rejected without referral to the Selective Service System.

Since on its face the application did not present conclusive evidence for rejection, Feliciano was entitled to an advisory recommendation from the Selective Service System. Having not received it, we think it should be obtained and considered before the application is acted upon.

 As we recently reiterated in Nixon v. Secretary of the Navy, 422 F.2d 934 (2 Cir. 1970), the Army is bound by its own regulations. See Smith v. Resor, 406 F.2d 141 (2 Cir. 1969); Hammond v. Lenfrest, 398 F.2d 705 (2 Cir. 1968). When a clear cut duty imposed by a regulation is not performed, mandamus will issue to compel the federal officer to fulfill his obligation. 28 U.S.C. § 1361 (1964). No prolonged discussion is required over whether the duty mandated by paragraph 6–8b(1) is the sort amenable to mandamus. Its very language—that if the application is not clear one way or the other, it *will* be forwarded—marks it as "a positive command and so plainly prescribed as to be free from doubt." Prairie Board of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10 Cir. 1966), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966). See L. Jaffe, Judicial Control of Administrative Action, 184–85 (1965).

Finding that the clear command of paragraph 6–8b(1) has not been followed, we order the writ be granted. The case is remanded to the Eastern District of New York for the issuance of a writ ordering that the Army reconsider Feliciano's application for a hardship discharge *de novo*, that he be allowed to submit any additional information he deems relevant and to update the original application. The writ shall further order that unless the Army grants the application on its initial review under paragraph 6–8b(1) the application shall be forwarded to the New York State Director of Selective Service for a recommendation. The Eastern District of New York shall retain jurisdiction for any further proceedings it deems necessary.

To assure that the court retains jurisdiction over this matter, it is further ordered that the Army keep Feliciano at Fort Wadsworth at least until it has reached a determination on his application after fully complying with our mandate.

The mandate of this court shall issue forthwith.