Pvt. Jose A. VALLECILLO, Petitioner,

v.

Maj. Gen. Bert A. DAVID, as Commanding General, Fort Dix, New Jersey, Hon. Robert F. Froehlke, as Secretary of the Army, Respondents.

Civ. A. No. 1151–72.

United States District Court,
D. New Jersey.

June 18, 1973.

Legal Aid Society of Mercer County, by Richard B. Gelade, Trenton, for petitioner.

Herbert J. Stern, U. S. Atty., by William A. Carpenter, Jr., Asst. U. S. Atty., for respondents.

## OPINION AND ORDER

CLARKSON S. FISHER, District Judge.

Petitioner, Jose Vallecillo, a private in the United States Army, seeks a writ of habeas corpus alleging that when, within the first four months of his enlistment, it was discovered that he could not meet the medical standards for enlistment, the Army, under its own regulations, should have discharged him or given him the option of remaining in the Army notwithstanding his medical condition. Petitioner contends that the Army is required by its regulations to give him an opportunity to exercise this option in writing. Since the Army never obtained petitioner's written choice and since the Army regulations do not provide any remedy in this situation, the petitioner urges that he is entitled to the writ of habeas corpus or other appropriate judicial relief.

Petitioner's claims present troublesome legal questions in addition to one important factual dispute. Also, he has been found guilty of being absent without leave by a military court martial and was sentenced to a bad conduct discharge which has been appealed unsuccessfully to the highest military authorities. This Court must decide whether the petitioner will be released from the Army by the granting of the relief sought here or by the imposition of the penalty imposed by the military courts.

### I

Private Vallecillo, a citizen of Honduras, was voluntarily enlisted in the United States Army on February 13, 1969 for three years. At that time, he informed the recruiting officials of his medical condition commonly known as "flat feet". Petitioner was examined by Army physicians who noted the condition but nevertheless found him acceptable for enlistment. He was guaranteed that he could undertake basic combat training with a "buddy" and that he would be trained as a paramedic under the "Army Career Group 91 Medical Care and Treatment" enlistment option. After completing approximately one half of basic combat training, petitioner's feet were so troublesome that a medical examination was necessitated. On March 14, 1969 a medical board made certain findings based upon this examination. The findings of this Board are disputed.

Petitioner claims that the examination resulted in an "L–3" profile which means such persons would not be acceptable to the armed forces in time of peace.[1] The Army argues that Private

---

1. AR 40–501, Para. 9–3c(3) provides:

   A profile containing one or more numerical designation "3" signifies that the individual has medical condition(s) or physical defect(s) which requires certain restrictions in assignment within which he is physically capable of performing full military duty. *Such individuals are not acceptable under procurement (entry) standards in time of peace*, but may be acceptable in time of partial or total mobilization. They meet the retention standards, while in service, but should receive assignments com-

Vallecillo received an "L–2" profile which denotes a physical defect which could affect only a soldier's job classification and specific assignment with appropriate medical limitations.[2] The results of this examination appear to have been altered by changing a typewritten number two to an ink inscribed number three.[3]

In a habeas corpus proceeding the burden of proof is on the petitioner to establish his right to relief by the fair preponderance of all the credible evidence and from the reasonable deductions and inferences which can be drawn therefrom. Scatena v. Brierley, 310 F. Supp. 406, 409 (W.D.Pa.1970); Williams v. Smith, 434 F.2d 592, 595 (5th Cir. 1970). In order to meet this burden of proof in support of his contention that the Army discovered him unable to meet enlistment medical standards, petitioner offered the following uncontradicted evidence.

After completing basic training, he was transferred to Fort Sam Houston, Texas to begin his medical training which ended when his commanding officer requested that he be re-assigned because of his feet. On May 1, 1969 he was removed from this training and assigned to Fort Gordon, Georgia, as a communications specialist. On August 26, 1969 Private Vallecillo was examined again. This medical board of physicians reported his previous profile as "L–3P".[4] Even though this board recommended an "L–2" profile which was approved on September 5, 1969, the fact that it accepted petitioner's previous profile as "L–3P" tends to show that his profile

prior to September was within the "3" category. Finally, in the interest of justice, this Court requested that Private Vallecillo consent to an examination to determine his physical profile. On August 18, 1972 petitioner was examined by Dr. N. A. Camson of the Walson Army Hospital Orthopedic Clinic at Fort Dix, New Jersey. Dr. Camson recommended a "PL–3C" profile.

Based upon a review of all of the evidence this Court is satisfied that petitioner has met his burden of proof, that on March 14, 1969 he did not meet the Army's medical entry standards because he was categorized with an "L–3" physical profile.

## II

Under these circumstances, the applicable Army Regulation is A R 40–3, Para. 54(e)(3) which provides:

"A patient who meets retention medical fitness standards (Chap. 3, A R 40–501) but does not meet procurement medical fitness standards (Chap. 2, A R 40–501) *will be processed* for separation on the recommendation of an approved medical board only if he applies for separation within the time limit and as prescribed in paragraph 5–9, A R 635–200. If he declines to apply for separation and his erroneous entry into the service was discovered within the time limit stated in A R 635–200, he *must sign a statement* acknowledging that he has been informed of his right to apply for such separation but declines to do so, and desires to complete the term of service for which he was enlisted or

mensurate with their functional capability. (emphasis supplied).
The letter "L" designates a medical problem in the lower extremities of the body, including the feet. AR 40–501, Para. 9–3b(3). For a general description of the physical profile serial system see AR 40–501, Para. 9–3(a) & (b).

2. AR 40–501, Para. 9–3c(2) provides:
A physical profile 2 under any or all factors indicates that an individual meets procurement (entry) standards,

but possesses some medical condition of physical defect which may impose some limitations on initial MOS classification (see AR 611–201) and assignment . . . .

3. Subsequent uncertified copies of the results of the March 14, 1969 examination have a typewritten number 3 under the L category. Petitioner's Exhibit 1, Def. Exhibit B and Record of the Special Court Martial, Section S, Ex. D–B Id.

4. Petitioner's Exhibit 1, Def. Exhibit C.

was inducted. The statement will become a permanent part of his personnel records." (emphasis supplied). A R 635–200, Para. 5–9 provides in part:

"*Discharge of personnel who did not meet the medical fitness standards.* a. Commanders specified in section VI, Chapter 2 are authorized to order discharge of individuals who were not medically qualified under procurement medical fitness standards when accepted for induction or initial enlistment. Eligibility for discharge will be governed by the following:

(1) A medical board finding that the individual has a medical condition which—

(a) Would have permanently disqualified him for entry in the military service had it been detected at that time; and

(b) Does not disqualify him from retention in the military service under the provisions of Chapter 3, A R 40–501.

(2) A request for discharge will be submitted by the individual to his unit commander within 4 months from date of initial entry on active duty . . . . An individual found to meet the requirements of a (1) above, who *elects* to complete the period of service for which inducted or enlisted *will be required* to submit a written statement set forth in paragraph 54e(3), A R 40–3." (emphasis supplied).[5]

Petitioner contends that the Army violated its own regulations, especially paragraph 54(e)(3) of A R 40–3 because it failed to give him the opportunity to apply for discharge or to elect in writing to remain in the Army notwithstanding his physical condition which did not meet enlistment standards. It is clear from the facts that the Army should have complied with this regulation on March 14, 1969 since this was less than four months after Private Vallecillo's entry into the military.

The Army concedes that no such written election or acknowledgment was signed by petitioner. Instead, the Army emphasizes that part of the regulation which states that a person can be processed for discharge only if he applies within four months from entry and "as prescribed in Paragraph 5–9, A R 635–200". It argues that because Private Vallecillo did not make an application according to the strict requirements of A R 635–200 as interpreted in Grosso v. Resor, 322 F.Supp. 670 (S.D.N.Y.1971), aff'd, 439 F.2d 233 (2d Cir. 1971), his claims for relief are without merit.

The reliance on *Grosso, supra,* is misplaced. There the Court determined that Grosso's visit to the Fort Ord dispensary and the letter of complaint by his father to his Congressman did not satisfy the regulatory requirements under A R 635–200 as a request made by the individual soldier within four months of initial entry on active duty. 439 F.2d at 237. Simply stated, *Grosso* concerns a soldier, who, knowing his medical condition entitled him to some remedy, failed to formalize his request for discharge. Here the Army failed to do what it was bound to do by its own regulations, namely inform petitioner of his right to apply for a discharge and then obtain a written acknowledgment or election under A R 40–3, Para. 54(e) (3).[6]

Petitioner did not waive his procedural rights because he made no application

---

5. Other relevant paragraphs of this regulation include:

  b. Application for discharge will be processed promptly, and separation will be accomplished within 72 hours following approval by the discharge authority. and

  e. This paragraph is not to be used as a substitute for unsuitability separations in cases of character and behavior disorders, which will continue to be processed under the provisions of AR 635–212.

6. Petitioner, unlike Grosso, was not aware of his right to apply for discharge even though he was very aware of the medical problem in his feet. AR 40–3, Para. 54 (e) (3) is the specific regulation to remedy this unawareness because it places the

within four months of enlistment. The language of A R 40–3 utilizes the rationale that a person cannot waive a legal right of which he has no knowledge.[7] This regulation, on its face, requires the Army to inform petitioner of his right to request a discharge when executing an acknowledgment which he *must* sign. If the Army has imposed on itself the duty to inform such applicants of this right, it follows that the burden is also on the Army to obtain the statement.

■ Having determined that within four months of his enlistment the Army discovered that petitioner was unable to meet the medical standards of entry and that no statement acknowledging his right to apply for discharge or electing to remain in service was signed as required, this Court concludes that the Army, under these circumstances, violated its own regulations.

### III

In view of this violation, the Court must choose the appropriate remedy. This choice is difficult because of petitioner's court martial.

Private Vallecillo took unauthorized leave in October and November, 1969 on two separate occasions. On November 17, 1969 he pleaded guilty before a summary court martial and was fined forty dollars for these offenses. He took unauthorized leave again from December 15, 1969 to March 2, 1971. For this offense he was found guilty at a special court martial and sentenced to a bad conduct discharge. Petitioner appealed the result through the military courts to no avail. The United States Court of Military Appeals denied his petition for review. Subsequently, this Court ordered a stay of execution of sentence un-

til resolution of the petitioner's application for a writ of habeas corpus.

■ Judicial review of Army administrative determinations is restricted. Federal courts will review military determinations by way of an application for a writ of habeas corpus to insure that rights guaranteed by the Constitution or by military regulations are protected. Where the military has prescribed a procedure for entertaining requests for release because of a soldier's conscientious beliefs which enjoy a form of constitutional protection, habeas corpus can be utilized to review the military's disposition of such requests. *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). Where military regulations authorize servicemen to request discharges on other grounds, the writ will be available to insure that the military's disposition of such applications is in accordance with its own regulations. *Allgood v. Kenan*, 470 F.2d 1071, 1073 (9th Cir. 1972); *Feliciano v. Laird*, 426 F.2d 424 (2d Cir. 1970); *Cuadra v. Resor*, 437 F.2d 1211 (9th Cir. 1970). Where the military violates its own regulations, and a clear cut duty imposed by a regulation is not performed, mandamus may be issued to compel the officer of the United States to fulfill his obligation. *Feliciano, supra* 426 F.2d at 429. Just as in *Feliciano*, the language of the applicable regulations is very clear—the patient *will be processed* for separation, he *must* and he *will be required* to submit a written statement. These terms constitute "a positive command and so plainly prescribed as to be free from doubt" so that mandamus could be an appropriate remedy. *Feliciano, supra*, 426 F.2d at 429, quoting Prairie Band of Pottawa-

---

burden on the Army to inform the petitioner of his right.

7. *Compare* Andre v. Resor, 313 F.Supp. 957 (N.D.Cal.1970), *aff'd*, 443 F.2d 921 (9th Cir. 1971), where petitioner was inducted for failure to notify his draft board of his current address. Later, the United States Supreme Court ruled such inductions unlawful in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506,

24 L.Ed.2d 532 (1970). The Court affirmed à grant of habeas corpus even though the United States argued that petitioner had waived his rights by submitting to induction. 443 F.2d at 921. The District Court noted that waiver could not occur until petitioner "became aware of the *Gutknecht* decision *and* its applicability to his situation". 313 F.Supp. at 959.

tomie Tribe of Indians v. Udall, 355 F. 2d 364, 367 (10th Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966).

In this case, because the Army failed to do what it was required to do by its own regulations, and because no remedy is provided in the event of such failure within the regulations, this case must be remanded to the Army for full de novo consideration. Here the Army "trapped itself in the mesh of its own regulations" and the petitioner must be given the opportunity to make the election which he was denied. *Cuadra, supra*, 437 F.2d at 1212. The clock must be turned back to March 14, 1969 and the petitioner given his option under A R 40–3, Para. 54(e)(3). The application for the writ of habeas corpus should be granted. If petitioner chooses to apply for discharge, the execution of the writ will be stayed a reasonable time to permit the Army to separate the petitioner in accordance with its own Regulations.[8] cf. Grant v. Cooksey, Civ.No.1692–70, 4 S.S.L.R. 3094, 3095 (D.N.J. Feb. 9, 1971). It should be apparent de novo consideration means that any request for discharge must be based *solely* upon petitioner's military record prior to March 14, 1969 and the determination of that date that he did not meet entry medical standards.

### IV

This Court, in granting relief to the petitioner, is not unaware of the "delicate" relationship between civilian and military judicial processes. Our constitutional tradition reflects a "desire for civilian supremacy and subordination of military power". Laird v. Tatum, 408 U.S. 1, 18, 92 S.Ct. 2318, 2328, 33 L.Ed.2d 154 (1972) (Douglas J., dissenting). Habeas corpus may be used to test the jurisdiction of the Armed Services to try or detain a member of the military. Parisi, *supra*; Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L. Ed. 8 (1955); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

When civilian judicial review of a military court martial concerns protection of individual constitutional rights the duty of federal civil courts to protect these rights is not diminished merely because a judicial proceeding has been conducted by the military. Levy v. Parker, 478 F. 2d 772, at 783 (3d Cir. April 18, 1973).

While petitioner's claim for a right to apply for a discharge does not fall within the Constitution's protections, the obvious inadequacy of the applicable Army regulations in this case could perhaps be viewed as raising a due process claim, especially when these regulations determine the power of the Army to detain the petitioner. When the regulations concerning the involuntary activation of an Army reservist were challenged, the Court of Appeals for this Circuit stated that federal courts have jurisdiction

"to review procedures employed by the military to determine if they comport with the requirements of procedural due process in light of the context in which the procedures operate." O'Mara v. Zebrowski, 447 F.2d 1085, 1088 (3d Cir. 1971).

Petitioner, apparently frustrated with the Army's inability to deal with his medical problem and unaware of his right to apply for discharge, committed the offenses against military regulations.[9] These offenses fall in the midst of the spectrum constructed by the Supreme Court in Parisi v. Davidson, 405 U.S. 34, 46 n. 15, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). In *Parisi*, petitioner who claimed a conscientious objector status, was charged by a court martial with disobeying an order to redeploy in preparation for transfer to Viet Nam. The Supreme Court noted that had the Army's denial of his conscientious objection been wrongful, petitioner would have been entitled to immediate release, unless he was convicted of stealing another soldier's watch. In that case, release could have been delayed until he had completed the penalty imposed for the watch stealing charge.

---

8. AR 635–200, Para. 5–9, esp. (b).

9. Transcript of Special Court Martial at 24, 26.

**902**

Here, during court martial, the petitioner took a similar position, arguing that the Army could try him for a theft charge [10] but it could not convict him of charges arising from his medical problem just as Parisi could not have been tried for charges arising from his conscientious objector beliefs which entitled him to immediate release from the Army.

In view of the suggestion of the Supreme Court in *Parisi*, it does not appear that the relief granted here will impinge upon "the basic principles of comity that must prevail between civilian courts and the military judicial system". 405 U.S. at 46, 92 S.Ct. at 822.

Accordingly, the petitioner's application for the writ of habeas corpus is granted. The execution of the writ is stayed a reasonable time to permit the petitioner to apply for a discharge which must be considered de novo by the Army in accordance with this opinion and other applicable Army Regulations.

This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

So ordered.

---

10.  Transcript of Special Court Martial at 10, 17–18.