## Clyde R. WRIGHT, Jr.

v.

## Ralph A. HENDERSHOT et al.

### Civ. A. No. 76-959.

United States District Court,
E. D. Pennsylvania.

Oct. 6, 1976.

Peter L. Gale, Philadelphia, Pa., for plaintiff.

David W. Marston, U. S. Atty., Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., Captain Neal Ellis, Dept. of the Army, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

### A. INTRODUCTION

Plaintiff, a member of the religious sect known as the Jehovah's Witnesses, filed this action for an injunction and mandamus, requesting this Court to order the defendants to process plaintiff's application for discharge from the Pennsylvania Army Na-

tional Guard on the grounds of conscientious objection, and for writ of habeas corpus discharging plaintiff as a theological student. Jurisdiction is premised on 28 U.S.C. §§ 1331, 1361, 2201, 2202 and 2241. Plaintiff is a private in Headquarters and Company A 103rd Medical Battalion, Lancaster, Pennsylvania. Defendants, plaintiff's past and present commanding officers, and the Secretary of the Army, Martin Hoffman, filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted or in the alternative for summary judgment. For the reasons hereafter detailed, we will grant defendants' motion.

## B. FACTUAL BACKGROUND

In order to understand the genesis of plaintiff's claims, a review of the factual background is pertinent. On February 11, 1972, plaintiff voluntarily enlisted in the Pennsylvania Army National Guard and thereafter satisfactorily completed active duty training (Complaint ¶¶ 8, 9). In June, 1974, plaintiff became a student of the Jehovah's Witnesses; by November, 1974, because of his religious training, his beliefs had crystallized into objection to participation in war in any form (¶¶ 9, 10). On November 16, 1974, plaintiff informed his then commanding officer, defendant Bertz, of his beliefs and stated that he wished to be discharged as a conscientious objector. Thereafter, plaintiff submitted a formal application for such a discharge as required by Army Regulation (AR) 600–43.

Thereafter, plaintiff failed to appear at the next scheduled Multiple Unit Training Assemblies on December 21–22, 1974, or at any subsequent training assembly, " * * Because defendant Bertz required all men attending said assemblies to wear military uniforms and to participate fully in the

drills, all of which were contrary to plaintiff's beliefs" (¶ 19). On February 26, 1975, defendant Bertz mailed a notice to plaintiff that he would be ordered to active duty because he failed to attend the unit training assemblies (December 21 and 22, 1974, and January 21 and 22, 1975).

Plaintiff appealed [1] the involuntary activation orders through appropriate military channels, but such appeal was denied and he was ordered to report for active duty. This action followed, and a temporary restraining order was entered with defendants' concurrence staying the effect of the reporting date pending resolution of the issues presented herein.

## C. COMPLAINT

The complaint alleges two causes of action. In Count I, plaintiff claims that contrary to the clear duty set forth in the applicable Army Regulations, AR 600–43, his commanding officer failed to process his conscientious objection application, specifically, defendant Bertz failed to appoint an investigating officer under AR 600–43, Para. 2–4 even though plaintiff filed an application which constituted a prima facie case for discharge. Accordingly, mandamus is sought to compel defendants to process his discharge application [2] and to enjoin defendants from ordering him to active duty.

The second count proceeds on a different tack. Plaintiff avers that he was a theological student in the Theocratic Ministry School sponsored by Jehovah's Witnesses, and had filed appropriate statements pursuant to AR 135–91, Para. 18b(2) which entitled him to a discharge on April 14, 1974, but that the defendants have not processed this application either. Accordingly, a writ of habeas corpus is sought to compel his discharge.

---

1. In addition to the conscientious objector's petition, plaintiff sought discharge as a theological student under AR 135–91, Para. 18b(2). The Army Delay Appeal Board denied the application and affirmed the activation on February 17, 1976.

2. Specifically, plaintiff requests an order:
   " * * * that defendants schedule a prompt hearing, after notice, pursuant to AR 600–43, paragraph 2–5, not to be held during a unit training assembly, and with no requirement for plaintiff to wear a uniform; * * * ".

## D. MOTION FOR SUMMARY JUDGMENT

Defendants' motion challenges the sufficiency of the allegations[3], asserting that defendants did precisely what they were required to do. Specifically, they argue that plaintiff's admitted failure to attend the scheduled unit training assemblies of which plaintiff had notice violated his clear statutory duty to perform satisfactorily so that the involuntary activation was warranted under AR 135–91. The fact that none of the defendants appointed a hearing officer, as set forth in AR 600–43, Para. 2–4, is irrelevant, they argue, to the involuntary activation since plaintiff himself prevented the timely and proper processing of his conscientious objector petition. In addition, they argue the Army Delay Appeal Board properly denied the plaintiff's application for discharge as a theological student under 10 U.S.C. § 685 and § 1162.

## E. CONCLUSIONS

■ We agree with defendants on both counts. As to Count I, it is well-settled that mandamus will lie to compel the military to follow its own regulations. *Feliciano v. Laird,* 426 F.2d 424, 427 (2d Cir. 1970); *Cooper v. Barker,* 291 F.Supp. 952 (D.Md.1968); *Vallecillo v. David,* 360 F.Supp. 896, 898–99 (D.N.J.1973). However, it is equally clear that the federal courts will not review discretionary decisions of the military authorities made within their valid jurisdiction. *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *O'Mara v. Zebrowski,* 447 F.2d 1085 (3d Cir. 1971); *Russo v. Luba,* 400 F.Supp. 370 (W.D.Pa.1975). To state a claim under the mandamus statutes,

" * * * [I]t is imperative that the petitioner allege that the government owes the petitioner the performance of a legal duty 'so plainly prescribed as to be free from doubt.' " *Commonwealth of Pa. v. National Assn. of Flood Ins.,* 520 F.2d 11, 25 (3d Cir. 1975).

The legal duty owed must be a specific, plain ministerial act "devoid of the exercise of judgment or discretion", *Richardson v. United States,* 465 F.2d 844, 849 (3d Cir. 1975) *rev'd on other grounds* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

The issue in Count I is whether petitioner is entitled to relief in the nature of mandamus to compel defendants to process his application for discharge on the grounds of conscientious objection despite his failure to participate satisfactorily in the unit training assemblies. In other words, did defendant Bertz fail to perform a duty "devoid of the exercise of judgment or discretion"?

Plaintiff places great reliance on the directory language of Para. 2–4a, which provides:

"2–4. Investigating the applicant's claim. a. The commander exercising Special Court-Martial jurisdiction over the applicant will appoint an officer in the grade of 0–3 or higher, knowledgeable in policies and procedures relating to conscientious objector matters, to investigate the applicant's claim."

Citing numerous cases in which the military failed to follow this procedure[4], plaintiff argues that this duty to appoint is unequivocal and mandatory, devoid of room for the exercise of discretion, as further indicated in Para. 2–5c:

"c. The hearing may be delayed for good cause at the request of the applicant. If the applicant fails to appear at the hearing, the investigating officer may proceed in his absence and the applicant will be deemed to have waived appearance. However, this does not waive the requirement for an investigating officer. *Regardless of the desires of the applicant, an investigating officer will be appointed*

---

3. In connection with the motion, defendants submitted the Official Military Personnel File of the plaintiff (Ex.A) and copies of correspondence from the files of Headquarters and Company A Support, 103rd Medical Battalion, Lancaster, Pa. (Ex.D). Because we have considered these matters, we will review the motion under Fed.R.Civ.P. 12(c).

4. *United States ex rel. Mankiewicz v. Ray,* 399 F.2d 900 (2d Cir. 1968); *Hammond v. Lenfest,* 398 F.2d 705 (2d Cir. 1968); *Cooper v. Barker,* 291 F.Supp. 952 (D.Md.1968).

*to comply with the requirements described herein.*" (Emphasis added)

Moreover, plaintiff urges that he has always been willing to participate in any interview scheduled once the investigating officer is appointed. Because of the defendants' failure to perform their clearly mandated duty outlined in Para. 2–4, he contends, the investigating officer was never appointed, the hearing never took place, and the application was stalled without a ruling on its merits. Thus, the failure of the defendant Bertz to appoint has resulted in and caused the involuntary activation.

We cannot agree with the legal groundwork on which this seductive argument is premised. We reach this conclusion upon an analysis of the requirements of AR 600–43 placed on the applicant and on his unit commander. Para. 2–1 requires that the applicant submit an application containing specified information about the nature and origin of his religious beliefs as specified in Appendix A to the Regulation. Then the applicant must be counseled by his commanding officer concerning the provisions of 38 U.S.C. § 3103 and veterans' benefits. A statement must be signed. Para. 2–2. Next the applicant must be interviewed by a military chaplain who must report on the nature and basis of applicant's conviction as well as its sincerity (Para. 2–3a.) Para. 2–3b requires that the applicant be interviewed by a psychiatrist or other medical officer to determine if the applicant suffers from any psychiatric disorder which would warrant medical treatment or appropriate administrative action. Paras. 2–4, 2–5 and 2–6 provide for the investigation of the applicant's claim, conduct of the investigation and review of the case.

In this case, plaintiff has completed most of the steps outlined in Paras. 2–1 through 2–3. During the November 16–17, 1974 Unit Training Assembly, plaintiff advised his commanding officer of his desire for a conscientious objector discharge. He signed the statement required in Para. 2–2 pertaining to benefits, was permitted to consult a legal officer, and was interviewed by a military chaplain. (Exhibit A 23, 24; Exhibit D 10, 11). Thereafter, by December 1, 1974, he submitted a completed application as required in Para. 2–1. (Exhibit D 1–9; Complaint ¶¶ 12, 15 and 16).

Nevertheless, the step outlined in Para. 2–3b was never accomplished. Plaintiff has not been interviewed by a psychiatrist or other medical officer and his application is devoid of the report required in Para. 2–3b. Moreover, plaintiff, by letters, communicated to defendant Bertz his position:

"If at any time you wish for me to explain my decision to an investigating officer, I would be more than willing to do so, however, *not as a member of the National Guard nor at any meeting of the National Guard.*" (Exhibit A 75) (Emphasis added.)

His complaint similarly indicates his willingness to be interviewed, but not at a unit training assembly and with no requirement that plaintiff be required to wear a uniform. By letter, dated December 5, 1974, defendant Bertz had informed plaintiff:

"4. You are expected to attend the scheduled MUTA 4 on 21 & 22 Dec. 74. *During this drill we will arrange to complete the remainder of the administrative requirements* to process your application and *you will be interviewed by an investigating officer appointed by the Battalion Commander.* This will be in addition to participation as indicated in the unit training schedule." (Exhibit A 74) (Emphasis added.)

Plaintiff thereafter failed to attend the Unit Training Assemblies for December 21–22, 1974, and January 18–19, 1975, and defendant Bertz followed the provisions of AR 135–91 in requesting involuntary activation of the plaintiff.[5]

■■ Under these circumstances, we are compelled to conclude that despite the mandatory language of 2–4 requiring the appointment of an investigating officer, defendant Bertz did not fail to exercise a duty

---

5. Plaintiff does not assert that his absences from these Unit Training Assemblies were excused or that he was improperly processed under AR 135–91.

devoid of the exercise of discretion or judgment or, for that matter, so plainly prescribed as to be free from doubt. Appointment of such an officer is part of a relatively complex procedure and is set forth in the Regulation following the other requirements set forth in Paras. 2–1 through 3. Nowhere does the regulation set forth in clear and explicit terms the *time* at which the 2–4 appointment must be made. Since the various requirements for processing the application are set forth sequentially and the regulation is silent on the matter of the *timing* of the required appointment, we conclude that the appointment of an investigating officer is subject to the commanding officer's exercise of judgment and discretion.[6] As such, in the context of this particular case, we conclude that defendant Bertz was not clearly and unequivocally mandated to perform a duty devoid of the exercise of judgment so as to warrant mandamus relief. Accordingly, we will grant defendants' motion for summary judgment as to Count I.

We add, parenthetically, that we have not premised our conclusion on the precise grounds defendants argue in their motion. The applicant's general cooperation or lack of it does not serve to excuse a commanding officer's compliance with clearly mandated procedures of the regulation, *Johnson v. Laird,* 435 F.2d 493 (9th Cir. 1970), for cooperation is not a valid ground for denying or granting a conscientious objector discharge. Here, we merely determine that plaintiff's refusal to cooperate prevented completion of the clearly mandated psychiatric interview in accord with Para. 2–3b. The lack of such an interview was sufficient to throw a road block into the timing of the Para. 2–4 appointment and cast a hue of ambiguity and uncertainty over the duty to appoint. As such, with full compliance with requisite procedural steps in doubt, defendant Bertz did not fail to perform such a clear and manifest duty as to justify mandamus relief.

**6.** The applicant's military duties are not diminished or excused by the submission of a conscientious objector discharge application. Para. 2–10c provides:

In Count II, plaintiff seeks a writ of habeas corpus on the ground that defendants failed to process his application for discharge as a theological student based on AR 135–91, Para. 18b(2). Defendants contend that the application was properly processed and that the record of the Army Delay Appeal Board, Exhibit A, conclusively shows that the denial was not arbitrary or capricious. We agree and will accordingly deny the writ.

■ In the technical sense, the only claim plaintiff alleges in Count II is that the defendants failed to process the religious discharge application. *See* Complaint ¶ 39. Exhibit A conclusively proves the contrary. However, we will read this pleading liberally and construe it as if plaintiff were charging that the appeals board acted impermissibly and thus improperly denied the application. As such, we will review this claim under the appropriate scope of review—i. e., whether there is a basis in fact in the record for the determination made by the military authorities. *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); *Katz v. Commanding Officer,* 388 F.Supp. 22, 27 (E.D.Pa.1975).

The applicable regulation AR 135–91 provides:

"b. Religious reasons.

(1) Applications for discharge based upon religious reasons to become a regular or duly ordained minister of religion will be substantiated by appropriate documentary evidence as follows:

(a) Statement from the appropriate authority of the church, religious sect, or organization that the enlisted member has met the requirements for recognition as a regular or duly ordained minister of religion.

(b) Statement from appropriate official of the religious order, sect, or organization that the enlisted member—

" * * * [C]onscientious objector applicants are subject to all regulations to include those on training. * * * "

1. Must be separated from his military status for further processing into the order; and

2. Is fully qualified and acceptable for further religious training; and

3. If discharged, will be eligible for ordination or taking the final vows on or about a given date.

(2) Applications for discharge from theological or divinity students will be substantiated by a statement from the appropriate authority of the institution indicating that the individual is in fact enrolled and pursuing satisfactorily a course which will qualify him as a regular or duly ordained minister of religion."

Plaintiff's application for discharge under Para. 18b was incorporated into his letter appealing from active duty orders (Exhibit A 18–20). In none of these letters does plaintiff allege that he was preparing to become a "regular or duly ordained minister of religion." In Exhibit D at 6, plaintiff outlines the time he spends in religious activities, and on the basis of these exhibits, we find ample basis in fact for the Army Delay Appeals Board's conclusions that "his request for discharge is not valid as that is not his vocation." (Exhibit A 3A) Plaintiff admits as much in ¶ 29 of the complaint where he alleges that military duty would cause him to lose his employment as an insurance agent.

Plaintiff argues that under AR 135–91, once he supplied the requisite documentation, he was automatically entitled to a discharge. The applicable standard, however, is not set forth in that regulation but rather in 10 U.S.C. § 685 and § 1162. These statutes, read together with 50 U.S.C.Appendix § 456(g) and § 466(g) have been consistently interpreted to require that the soldier seeking discharge on grounds of being a theological student or as a duly ordained minister of a recognized religion demonstrate that his religious activity constitutes a vocation. *United States v. Lathrop*, 460 F.2d 761 (3d Cir. 1972) *cert. denied* 409 U.S. 873, 93 S.Ct. 204, 34 L.Ed.2d 124 (1972); *United States v. Pompey*, 445

F.2d 1313 (3d Cir. 1971). Plaintiff, we conclude, is not entitled to habeas relief.