Private Gregory G. **LAXER**, Petitioner,

v.

Brigadier General J. H. **CUSHMAN**, Commanding General, Fort Devens, Massachusetts; and Hon. Stanley Resor, Secretary of the Army, Respondents.

Misc. Civ. No. 69–28J.

United States District Court
D. Massachusetts.
June 19, 1969.

Edward Rudnitsky, Boston, Mass., for petitioner.

Paul F. Markham, U. S. Atty., Stanislaw R. J. Suchecki, Asst. U. S. Atty., for respondents.

## OPINION

JULIAN, District Judge.

Petitioner, a member of the United States Army in which he enlisted more than two years ago, brought this action seeking a writ of habeas corpus and various other declaratory, mandamus, and injunctive relief which, in effect, would result in his being discharged from the Army as a conscientious objector.

### I.

At the time suit was filed on April 25, 1969, the petitioner was subject to military orders to report on May 12, 1969, to the United States Army Replacement Station at Oakland, California, for further assignment in Vietnam. Respondents' appearance and opposition to the petition were not filed, however, until the close of business on May 8, 1969, at which time respondents also filed a motion for summary judgment, a motion to dismiss for lack of jurisdiction, the complete record of the administrative proceedings in petitioner's case, and various other documents.

The Court conferred with counsel for both sides twice on Friday, May 9, 1969, after which, in order to ensure itself a reasonable opportunity to study all the papers in the case, the Court issued a ten-day temporary restraining order enjoining respondents from removing petitioner from this District. The respondents did not object thereto. During the ten-day stay both sides filed briefs on the questions of jurisdiction and exhaustion of administrative remedies. A hearing was held on May 19 on respondents' motions to dismiss and for summary judgment, at which time the temporary restraining order was continued until 5 p.m. E. D. T. on Thursday, May 22, 1969. Subsequent extensions, to enable the parties to submit additional information concerning the case, moved the expiration date of the temporary restraining order to 5 p.m. E. D. T. on Thursday, June 19, 1969.

### II.

The petition alleges that petitioner Laxer enlisted in the Army on May 12, 1967, was trained as a "medic," and was assigned to work in a military hospital at Valley Forge, Pennsylvania. Petitioner alleges that as a result of his observing the wounded, he for the first time "became, by reason of religious training and belief, conscientiously opposed to participation in war in any form." Counsel for the parties agreed at the hearing that while he was assigned to Valley Forge petitioner received orders to report to Oakland, California, for shipment to Vietnam. The parties also agree that petitioner did not obey those orders but instead absented himself without authority from on or about October 22, 1968, until November 23, 1968, when he again came under the control of military authority at Fort Devens, Massachusetts, where he was prosecuted before a summary court-martial for having been absent without leave.

The parties also agree that on December 17, 1968, the petitioner filed an application for an administrative discharge as a conscientious objector. As required by Army Regulation 635–20,[1] petitioner was interviewed by an Army chaplain and by a psychiatrist. He was granted a hearing before an Army hearing officer. Petitioner appeared in person with counsel. On January 7, 1969, the hearing officer recommended disapproval of the application for discharge, as did the petitioner's unit commander on February 8, 1969. On March 27, 1969, petitioner's application was disapproved by order of the Secretary of the Army for the reason that petitioner's "objection to service is not based upon sincere religious beliefs and training."[2]

On April 18, 1969, petitioner was ordered to report on May 12 at Oakland for further assignment to Vietnam. This petition was filed one week later.

### III.

At the outset respondents contend that this Court lacks jurisdiction to entertain this petition because petitioner, having been ordered to report to a new duty station in Oakland, California, is not within the control or "custody" of the respondent Brigadier General Cushman at Fort Devens in Massachusetts.

It is well settled that servicemen who, like petitioner, seek administrative discharge from the military are under sufficient restraint of their liberty so as to be "in custody" within the meaning of 28 U.S.C. § 2241. Hammond v. Lenfest, 1968, 2 Cir., 398 F.2d 705,

710–711 and cases cited; Brown v. McNamara, 1967, 3 Cir., 387 F.2d 150, 152, cert. denied sub nom. Brown v. Clifford, 1968, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105. The narrower question of which duty station has control over petitioner raises more difficult problems, see United States ex rel. Rudick v. Laird, 412 F.2d 16 (2 Cir., April 23, 1969), which require a fuller record than that here presented before this Court will conclude that it lacks jurisdiction.[3]

The respondents' argument, at its strongest, is that the petitioner is in custody, if anywhere, in California. The Court, however, cannot overlook the facts that petitioner is actually in this District; that he was never in California; and that he is presently under the military control of the respondents in this District. It is immaterial that he is not physically confined.

> "[B]esides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."

Jones v. Cunningham, 1963, 371 U.S. 236, 240, 83 S.Ct. 373, 376, 9 L.Ed.2d 285.

The Army authorities in this case claim the authority to subject petitioner to their orders and supervision, including the authority to transport him from Massachusetts to California, by force if necessary.[4] The fact that a court order was necessary to prevent such a re-

---

1. Exh. D to respondents' "Opposition."

2. Petition, ¶ 15; see also page 1 of Exh. C to respondents' "Opposition."
   Disapproval of petitioner's discharge by order of the Secretary of the Army was preceded by the actions of the reviewing officer and of the three members of the "Class I–O Conscientious Objector Review Board" recommending disapproval of the discharge. See first four sheets attached to Exhibit C and Joint Exhibits 1 and 2.

3. Respondents' argument that, since Army Regulation 335–60 governing in-transit

transfers "promulgates nothing more than bookkeeping procedures" (Brief, p. 4), it does not confer jurisdiction, is double-edged. Neither does the Regulation deprive the Court of jurisdiction.

4. The Court takes judicial notice that such a forcible removal was precisely what occurred in another case filed in this Court involving a claim similar to petitioner's. Earl v. Cushman, Civil Action No. 68–1164–J (D.Mass., filed December 18, 1968).

moval has been considered persuasive evidence of "custody" within the meaning of 28 U.S.C. § 2241. Hammond v. Lenfest, *supra*, 398 F.2d at 711.[5]

■ I rule, therefore, that there is jurisdiction in this Court to entertain this petition.

## IV.

Respondents next argue that this Court should dismiss the petition because, prior to instituting this action, petitioner failed to exhaust all administrative remedies then available to him within the Army.

■ It is well settled that the doctrine of "exhaustion of administrative remedies" applies to cases involving complaints by military personnel and requires them, before coming to civil courts, to exhaust all available military remedies. Gusik v. Schilder, 1950, 340 U.S. 128, 131–132, 71 S.Ct. 149, 95 L.Ed. 146; In re Kelly, 1968, 5 Cir., 401 F.2d 211; Minasian v. Engle, 1968, 9 Cir., 400 F.2d 137; Noyd v. McNamara, 1967, D.Colo., 267 F.Supp. 701, 706, aff'd, 1967, 10 Cir., 378 F.2d 538, cert. denied, 1967, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667. This is a sound rule, founded upon notions of judicial economy and, more importantly, upon a judicial respect for the principles of separation of powers under our form of government. As the Supreme Court warned in Orloff v. Willoughby, 1953, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842:

"[J]udges are not given the task of running the Army. The responsibility for setting up channels through which * * * grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate dis-

cipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

Thus, if in fact petitioner Laxer has not exhausted his available military remedies, this Court should, absent extraordinary circumstances, decline to hear the case until the military authorities have been given "every reasonable opportunity" to consider his complaints. Craycroft v. Ferrall, 1969, 9 Cir., 408 F.2d 587, 595.

■ The respondents argue that available military remedies were not exhausted in two respects. They first assert that the petitioner failed to request reconsideration of his application for discharge by reason of conscientious objection, citing paragraph 5 of Army Regulation 635.20.[6] That paragraph, however, specifically provides that subsequent applications for discharge on grounds which are "substantially the same as a previous application disapproved by Headquarters, Department of the Army," should be returned to the applicant "without action." There is no mention made in paragraph 5 or elsewhere in Army Regulation 635.-20 of any procedure for requesting "reconsideration" of earlier denials of applications for discharge on conscientious objection grounds. Nor does the case of Noyd v. McNamara, *supra*, 267 F.Supp. 701, cited by respondents, suggest any such procedure. It is difficult to see, therefore, how petitioner's failure to request reconsideration can fairly be deemed a failure to exhaust *available* administrative remedies.

The second arrow to respondents' bow, however, is the claim that petitioner has failed to exhaust available military remedies in that he has not yet applied to

---

5. The fear of forum-shopping in a distant forum, which troubled the Court in United States ex rel. Rudick v. Laird, *supra*, is not present here. This district is the district in which petitioner has been subjected to military control for the past six months, is the district from which he

is being transferred to Oakland, and is the district in which the administrative proceedings in large part have taken place.

6. Exh. D to Respondents' "Opposition."

the Army Board for Correction of Military Records to correct an error or to remove an injustice. 10 U.S.C. § 1552; 32 C.F.R. § 581.3.

That Board, like similar boards established for the other military services pursuant to section 207 of the Legislative Reorganization Act of 1946, 10 U.S. C. § 1552, is composed of *civilian* personnel in the Department of the Army broadly empowered to determine "the existence of an error or an injustice" and to make recommendations to the Secretary of the Army after applicant has exhausted all administrative remedies afforded him by existing law or regulations. Craycroft v. Ferrall, *supra*, 408 F.2d at 592, and authorities there cited. Since a claimant can apply to the Board at any time within three years after discovery of the alleged error or injustice,[7] petitioner can easily make timely application. The Board is required to review each application to determine whether to deny it or to schedule a hearing.[8] Assuming a timely application after exhaustion of other effective administrative remedies,[9] the Board must grant a hearing unless it either determines to recommend relief without a hearing or determines that the evidence presented is insufficient to indicate probable material error or injustice.[10] At any hearing, petitioner would be entitled to present witnesses[11] and to appear before the Board either in person or by counsel of his own selection or in person with counsel.[12] Following a hearing the Board must prepare a record of the proceedings,[13] make written findings and recommendations,[14] and submit them to the

Secretary of the Army for appropriate action.[15]

Numerous courts in recent years have insisted that military servicemen contesting their treatment regarding discharge or retirement first apply for relief from the Board for Correction for their branch of the service before seeking adjudication in civil courts. Nelson v. Miller, 1967, 3 Cir., 373 F.2d 474, cert. denied, 1967, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (Navy); Sohm v. Fowler, 1966, 124 U.S.App.D.C. 332, 365 F.2d 915, 918 (Coast Guard); McCurdy v. Zuckert, 1966, 5 Cir., 359 F.2d 491, cert. denied sub nom. McCurdy v. Brown, 1966, 385 U.S. 903, 87 S.Ct. 212, 17 L. Ed.2d 133 (Air Force); Schwartz v. Covington, 1965, 9 Cir., 341 F.2d 537 (Army); Reed v. Franke, 1961, 4 Cir., 297 F.2d 17 (Navy).[16]

In recent decisions, however, two different Courts of Appeals have reached contrary results on the question whether, in habeas corpus cases involving applications for discharge from the military on conscientious objector grounds, the usual exhaustion doctrine applies so as to require an application to the appropriate Board for Correction. On March 5, 1969, in Craycroft v. Ferrall, *supra*, 408 F.2d 587, the Court of Appeals for the Ninth Circuit held that failure to apply to the Board for Correction of Naval Records constituted a failure to exhaust available military remedies. Accordingly, that court affirmed the district court's dismissal of Craycroft's petition for injunctive, declaratory and habeas corpus relief. Two weeks later, on the other

---

7. 32 C.F.R. § 581.3(c) (2).

8. 32 C.F.R. § 581.3(c) (5).

9. 32 C.F.R. § 581.3(c) (3).

10. 32 C.F.R. § 581.3(c) (5).

11. 32 C.F.R. § 581.3(d) (4).

12. 32 C.F.R. § 581.3(d) (1).

13. 32 C.F.R. § 581.3(f) (1) (d) (iii).

14. 32 C.F.R. § 581.3(f) (1) (c).

15. 32 C.F.R. § 581.3(f) (2).

16. The Supreme Court, in a recent case involving claims for back pay brought in the Court of Claims by dishonorably discharged servicemen who claimed constitutional error in their military court-martial convictions, mentioned resort to the Board for Correction of Military Records as one of the available remedies which had been exhausted. United States v. Augenblick, 1969, 393 U.S. 348, 349 n. 1, 89 S.Ct. 528, 21 L.Ed.2d 537.

hand, the Court of Appeals for the Fourth Circuit reached the opposite conclusion in United States ex rel. Brooks v. Clifford, 1969, 4 Cir., 409 F.2d 700. *Accord,* Gann v. Wilson, 1968, N.D.Cal., 289 F.Supp. 191, 193.

▆ After a careful consideration of both decisions, this Court is of the opinion that the Ninth Circuit opinion in *Craycroft* states the better rule because it requires the utilization of a final administrative remedy administered by civilians as distinguished from the military before recourse is had to the courts. Accordingly, I hold that petitioner has failed to exhaust all of the administrative remedies available to him in the Army, and that the petition should be, and is, dismissed on that ground.

### V.

In view of the conflict between the two circuits on the foregoing question, however, and in view of the outstanding military orders directing petitioner to report for assignment to Vietnam, the problem remains whether principles of judicial economy and a proper regard for the public interest require that this Court go further and, as an additional but independent ground for decision, resolve the instant petition on its merits.

▆ In considering respondents' motions the Court has necessarily reviewed the entire record upon which petitioner's claim is based.[17] Furthermore, counsel for both sides have conceded,[18] as indeed they must, that the scope of judicial review in cases such as this is limited to the extremely narrow question whether there was a "basis in fact" to support the denial of petitioner's application for discharge. United States ex rel. Brooks v. Clifford, *supra;* Craycroft v. Ferrall, *supra,* 408 F.2d at 591; Hammond v.

Lenfest, *supra,* 398 F.2d 705; Gann v. Wilson, *supra,* 289 F.Supp. 191; *cf.* Estep v. United States, 1946, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567; *but see* Brown v. McNamara, 1967, D.N.J., 263 F.Supp. 686, aff'd, 1967, 3 Cir., 387 F.2d 150, cert. denied sub nom. Brown v. Clifford, 1968, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105. Thus the judicial time and effort which would be required to consider the case on its merits has already been expended.

For these reasons and also because of the importance to the public interest that litigation of this type not be prolonged *any more than absolutely necessary,* the Court proceeds to the merits.

The reason given in the Secretary of the Army's order for the disapproval of petitioner's application was a finding that petitioner, in effect, was insincere in claiming that he was a conscientious objector by religious training and belief. (Exh. C, p. 1; see also ¶15 of the petition.)

I find that there was a basis in fact for that conclusion. Some of the evidence substantiating the Secretary's finding is stated below.

In his application for discharge, dated December 17, 1968 (Exh. C, p. 6, par. b), the petitioner stated:

"* * * I enlisted in the army on May 12, 1967. I did not want to be drafted and placed in something like infantry or artillery. I chose and was given a medical MOS. It had not *occurred to me to apply to Selective* Service for Conscientious Objection Status because I felt that I could serve in the Army without violating my beliefs and principles."

* * * * * *

"d. I must make it clear that I am not an absolute pacifist."

---

17. At the first conference on May 9, 1969, counsel for the petitioner stated for the record that petitioner relied upon the entire record of petitioner's application for discharge as a conscientious objector [Exh. C attached to respondents' "Opposition"], while reserving the right to chal-

lenge the authenticity and relevance of four pages thereof [pp. 30–33].

18. See respondents' memorandum of law, pp. 8–9; see remarks of petitioner's counsel at May 9, 1969, conference in Reporter's notes.

The hearing officer's report dated January 7, 1969, contains the following (Exh. C, p. 17, par. 3):

"Specialist Laxer stated that he had not received any specific religious training as a child. *He further stated that he had developed the beliefs which had caused him to submit his application approximately four years ago.*[19] Yet, due to coercion on the part of his mother in the form of a threat of suicide, Specialist Laxer enlisted in the Army upon determining that his grades in college were not sufficient to permit continued deferment from the draft. Specialist Laxer stated that the threat of suicide was based, not on the desire to have her son serve his country, but on the fear that if he refused entrance in the Army, he would be imprisoned in a civilian jail. She considered this was an inhuman condition. Specialist Laxer elected to enlist so that he could choose the field which would least be likely to require him to go against his beliefs." (Emphasis supplied.)

The following also appears in the hearing officer's report (Exh. C, p. 16, par. 2):

"Specialist Laxer completed his informal presentation with a statement that his beliefs were strong enough so that in no political situation could he allow himself to take part in hostilities. He did temper this attitude by saying that he would, in defense of the nation, consider serving in a field such as medicine, caring for those who were defending our nation."

At his trial before a Summary Court-Martial on January 8, 1969, for being absent without leave, the petitioner was asked if he would serve in the Army in a non-combatant duty assignment in a World-War II type of war should it break out the next day. The petitioner replied that he would serve in that situation (Exh. C, pp. 30 and 31).

There was sufficient evidence before the Department of the Army to warrant the inferences that petitioner's request for discharge was not based upon any religiously motivated conscientious objection to participation "in war in any form" but, instead, upon his objection to participation in the war in Vietnam.[20] The Secretary of the Army's finding that petitioner's "objection to service is not based upon sincere religious beliefs and training" is amply supported by the evidence before him. I find that there was a basis in fact for that conclusion and that his action in disapproving petitioner's application for separation was in conformity with Army Regulation 635–20 and was justified. *Compare* 50 U.S. C. App. § 456(j); *see* United States v. Curry, 410 F.2d 1297 (1 Cir., June 5, 1969).

On each of the two grounds stated above, it is ordered that the petition be dismissed.

---

19. In his complaint, however, filed April 25, 1969, and signed and sworn to by the petitioner, he alleges as follows:

"8. On May 12, 1967, when he was about to be drafted, the petitioner enlisted in the United States Army. It was agreed that he would serve as a medic, and as such, he would discharge his military obligation. After basic training and basic medical training, he was assigned to Valley Forge Hospital for forty weeks. There he had an opportunity to observe the wounded, including amputees."

"9. While at Valley Forge Hospital, *and not before*, he became, by reason of religious training and belief, conscientiously opposed to participation in war in any form." (Emphasis supplied.)

20. Petitioner absented himself without leave immediately after receiving notice of orders assigning him to Vietnam and soon thereafter he filed his application for discharge. When he absented himself without leave he had been in the Army nearly one and one-half years.